**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**STEPHEN MCGRATH**                                                                      **PLAINTIFF**

**v.**                                                                  **CIVIL ACTION NO.: 1:11-CV-209-A-S**

**EMPIRE INVESTMENT HOLDINGS, LLC,**
**and POLYESTER FIBERS, LLC**                                                **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

Before the Court are a number of motions filed by Defendants Empire Investment Holdings, LLC, and Polyester Fibers, LLC. After reviewing the motions, responses, rules and authorities, the Court is prepared to rule.

**BACKGROUND FACTS**

In the operative complaint in this action, Plaintiff Stephen McGrath alleges the following: McGrath began working for Leggett and Platt Polyster Fibers, LLC as a plant manager in its Tupelo, Mississippi facility. In November 2008, Leggett and Platter Polyster Fibers, LLC was purchased by Empire Investment Holdings, LLC, and the name of the company was changed to Polyester Fibers, LLC. McGrath alleges that although Polyester Fibers and Empire are two separate legal entities, the companies share much of the same management, and both Defendants actively participate in the direction and management of several manufacturing facilities located in Northeast Mississippi and North Carolina. According to McGrath, Empire actively directs the appointment of officers at Polyester Fibers and supervises the day to day disciplinary actions of the management team at their manufacturing facilities.

In 2009, McGrath was assigned to manage the Defendants' Verona and Pontotoc plants in addition to the Tupelo facility. McGrath alleges that beginning in 2009, one of the Defendants' customers, a bedding manufacturer in Tennessee, requested that Polyester Fibers produce a .60 oz.

fire resistant (FR) product for use in the manufacture of mattresses. This request was driven by competitors offering a lower cost .60 oz. FR product that could pass "Federal Burn Requirements." At this time, the Tupelo facility was producing .80 oz. FR material for the TN company. However, because the Tupelo plant lacked the capability to produce .60 oz. product that could consistently pass an in-house "burn test," Shannon Marshall,[1] the CEO of Polyester Fibers, ordered the plant to produce a .65 oz. product which would pass the "burn test," mislabel it as .60 oz. product, and then deliver the mislabeled product to the TN manufacturer for testing. After this product passed the TN manufacturer's testing, the Tupelo plant was then ordered to continue producing the "counterfeit" .60 oz. product and selling it to the TN company.

In August of 2010, the Tupelo plant received requests for samples of the purported .60 oz. product from the Defendants' sales department. The sales department wanted to submit sample rolls to a potential new customer located in West Virginia. McGrath learned that the Defendants planned to have sample rolls of the purported .60 oz. product manufactured and certified as fire resistant in Tupelo, and then ship the rolls to a plant in North Carolina. The rolls would then be re-labeled to indicate that they were manufactured and certified in North Carolina, with the ultimate goal of shifting production of the ostensible .60 oz. product to North Carolina.

McGrath complained to Marshall and Kevin Burnette (Polyester Fibers' Vice-President of Operations) that the proposed plan should not be implemented because the origin and weight of the sample product was false. McGrath was also concerned that once production was transferred to North Carolina, the North Carolina facility, unaware of the fact that Marshall and Burnette had

---

[1]Plaintiff alleges that during this time period, Marshall also held a management position with Empire.

directed McGrath to mislabel the .65 oz. FR product as .60 oz. FR product, would begin manufacturing .60 oz. product that would be unable to pass FR certification, but which would use the FR certification that had been achieved with the .65 oz. product manufactured in Tupelo.

McGrath contacted Tommy Wood (the President of Polyester Fibers) and asked him if he knew what was going on. Wood stated that "he was being left out of the loop," but was concerned at the attempt to secure the West Virginia customer using the Tupelo product. Nonetheless, Marshall and Burnette instructed the Tupelo operation to send the sample rolls to the North Carolina plant. The Tupelo operation was also directed to forward a Certificate of Analysis (COA) template on a computer file to Burnette and the sales manager so they could modify it to look like the product was being produced in North Carolina. According to McGrath, the .60 oz. product that would be manufactured in North Carolina would be unable to pass FR certification that the .65 oz. product had undergone.

McGrath alleges beginning in 2009, he began voicing concerns to managers and officers of both Polyester Fibers and Empire regarding violations of OSHA, EPA regulations, and other safety regulations, as well as the marketing of the counterfeit .60 oz. product. In August 2010, he again raised concerns regarding re-tagging the .65 oz. FR product produced in Tupelo as .60 oz. FR product produced in North Carolina. McGrath alleges that due to his objections, he was targeted by Marshall and Burnette for termination.

In September 2010, McGrath was given a poor performance review which failed to follow company guidelines. According to McGrath, the review was "a farce and a blatant attempt to paper over Defendants' actual motives for terminating the Plainitff, which were that he was failing to fall in line with Defendants' directives." On September 9, 2010, McGrath was terminated for allegedly

3

directing a racial slur at an African-American employee, which McGrath denies. McGrath alleges that when challenged, Defendants changed their story and told him he was being terminated for insubordination due to his failure to report directly to Micahel Greif (general counsel for Empire) before taking any disciplinary action against an employee. Defendants later changed their story a third time and stated that McGrath was terminated due to poor performance. McGrath alleges that the real reason for his termination was his opposition to the illegal activities of Polyester and Empire.

## PROCEDURAL HISTORY

McGrath commenced this action by filing a Complaint in the Circuit Court of Lee County, Mississippi. Defendants timely removed the action to this Court based on diversity of citizenship of the Defendants. Defendants soon thereafter filed Motions to Dismiss [17, 19]. In response, Plaintiff filed a Motion for Leave to File an Amended Complaint, which was opposed by Defendants on the basis of futility. On June 21, 2012, Magistrate Judge Sanders granted Plaintiff's motion for leave to amend and directed Plaintiff to file his First Amended Complaint within fourteen days. However, Plaintiff did not file his Amended Complaint until July 27, 2012. On August 13, 2012, Defendants filed a Motion to Strike the Amended Complaint [49], Motion to Dismiss, or in the Alternative, for Summary Judgment [51], and Joint Motion to Dismiss [53]. On August 30, 2012, Defendants filed a Motion for Sanctions [63]. Each Motion will be addressed below.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Id. But the court is not bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678-79, 129 S. Ct. 1937.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. Id. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Twombly, 550 U.S. at 555, 127 S. Ct. 1955. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. Lormand, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed. Twombly, 550 U.S. at 555, 127 S. Ct. 1955.

## DISCUSSION

### Motion to Strike [49]

Defendants initially seek to strike Plaintiff's First Amended Complaint and dismiss this action pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with an order of this Court. On June 21, 2012, Magistrate Judge Sanders granted Plaintiff leave to file his First Amended Complaint within fourteen days. However, due to what Plaintiff terms an "internal

miscommunication," the Amended Complaint was not filed until July 27, 2012, or approximately three weeks later than the deadline set by the Court.

Rule 41(b) authorizes the Court to dismiss an action for failure to comply with an order of the Court. However, a dismissal with prejudice under Rule 41(b) "will be affirmed only upon a showing of a clear record of delay or contumacious conduct by the plaintiff." Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir. 1982). Although the Court cautions Plaintiff's counsel to be more diligent in ensuring that Court imposed deadlines are met, the Court finds that the extreme sanction requested by the Defendants to be unwarranted by a three week delay. Accordingly, the Motion to Strike is DENIED [49].

**Joint Motion to Dismiss [53][2]**

In his first amended complaint, McGrath asserts the following claims against Empire and Polyester: (1) Retaliatory discharge for reporting or refusing to engage in the illegal acts of his employer under the McArn exception to the employment at-will doctrine; (2) libel, slander, and false light invasion of privacy; (3) breach of implied contract; (4) intentional infliction of emotional distress and "outrage"; and (5) fraud. McGrath also alleges that Empire is liable for the tort of wrongful interference with his business relationship with Polyester Fibers.

I.    McArn Claim

Defendants first seek dismissal of Plaintiff's claim for wrongful discharge under the McArn doctrine. Mississippi adheres to the doctrine of "employment at-will." That doctrine has been

---

[2] As stated above, Defendants initially filed a Joint Motion to Dismiss [19] all of Plaintiffs' claims. After Plaintiff filed his Amended Complaint, Defendants' filed a Second Joint Motion to Dismiss [53] which contained new arguments but also reincorporated and relied upon all the arguments advanced in the first Motion to Dismiss. Accordingly, the Court shall consider Defendants' Motions together.

summed up as "[t]he employee can quit at will; the employer can terminate at will. This means either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." Kelly v. Miss. Valley Gas Co., 397 So. 2d 874, 874-75 (Miss. 1981). However, in McArn v. Allied Bruce-Terminix Co., Inc., the Mississippi Supreme Court recognized two narrow exceptions to this doctrine:

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

626 So. 2d 603, 607 (Miss. 1993). A plaintiff's subjective belief that the acts reported were illegal does not satisfy McArn; instead, the alleged act must actually be illegal. Wheeler v. BL Dev. Corp., 415 F.3d 399, 403 (5th Cir. 2005). Furthermore, violations of federal regulations such as OSHA have been found insufficient to constitute "illegal acts" for the purposes of McArn. Howell v. Operations Mgmt. Int'l, Inc., 77 F. App'x 248, 248 (5th Cir. 2003). To invoke the McArn exception requires "criminal illegality." Wheeler, 415 F.3d at 404, n.4.

Plaintiffs' Amended Complaint asserts that "[t]he counterfeit labeling, certificates of origin and Certificates of Analysis constituted forgery under [Mississippi Code Section 97-21-59], as well as the statutes against forgery in North Carolina and West Virginia. The counterfeit labeling and certificates would also constitute the crime of false pretenses under the laws of those states. Finally, the false labels and certifications would be in criminal violation of the [the Flammable Fabric Act].

After carefully reviewing Defendants' arguments and the allegations in the Amended Complaint, the Court finds that the Plaintiff has sufficiently alleged that he was discharged in retaliation for reporting or refusing to engage in conduct which constituted the crime of false

7

pretenses as well as a criminal violation of the FFA.

While the Defendants argue that selling the mislabeled products could not plausibly constitute the crime of false pretenses, the Court disagrees. Under Mississippi law, the elements of false pretenses are: (1) the pretenses were false; (2) that the Defendants knew them to be false; (3) that the pretenses were the moving cause by which the money was obtained; (4) that the false representation was made with regard to an existing fact; and (5) the property or money obtained under false pretenses is required to be to the detriment or injury of the person from whom the defendant obtains the same. Martin v. State, 87 So. 3d 1145, 1148 (Miss. Ct. App. 2012); MISS. CODE ANN. § 97-19-39. The well-pleaded allegations in the Amended Complaint show that the Defendants were selling intentionally mislabeled product to the Tennessee customer, and planned to do the same with the West Virginia customer, are sufficient to allege that the Defendants committed or planned to engage in conduct which could constitute the crime of false pretenses.

Defendants also argue that Plaintiff's McArn claim related to the alleged scheme to sell mislabeled product to the West Virginia customer must fail because the Defendants never actually implemented the plan. However, the "[McArn] exception does not require that a crime has already been committed." Hammons v. Fleetwood Homes of Miss., Inc., 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (citing Paracelsus Health Care Corp. v. Willard, 754 So. 2d 437 (Miss. 1999)). The Court has been presented with no authority holding that the McArn exception is inapplicable when an employee reports or refuses to participate in a plan to engage in criminal activity, but is then terminated before the plan is implemented.

The Court also finds that McGrath has sufficiently alleged, for 12(b)(6) purposes, that Defendants' alleged plan to distribute FR product manufactured in North Carolina using the altered

COA's would constitute a criminal violation of the Flammable Fabrics Act (FFA), which among other things makes it illegal to "furnish, with respect to any product, fabric or related material, a false guaranty . . . with reason to believe the product, fabric, or related material falsely guaranteed may be introduced, sold or transported in commerce." 15 U.S.C. § 1197(b). Although Defendants argue that neither they nor the product at issue are subject to regulation under the FFA, the Court finds that it would be improper to make that determination at this early stage of the litigation.

In sum, the Court finds that the Amended Complaint adequately alleges that McGrath was terminated in retaliation for reporting or refusing to participate in the illegal activities of his employer, and that is all that is required at this stage of the litigation. Accordingly, Defendant's Motion to Dismiss is denied as Plaintiff's McArn claim.

## II.     Libel, Slander, and False Light

Regarding McGrath's claims for libel and slander, the elements of a claim for defamation are: (1) a false and defamatory statement regarding the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of [the] statement irrespective of special harm or existence of special harm caused by publication of the defamatory statement. Speed v. Scott, 787 So. 2d 626, 631 (Miss. 2001). In their original motion to dismiss, Defendants asserted that McGrath had not adequately plead his defamation claims because the Complaint contained no factual allegation that the allegedly defamatory statements were published to a third party. Plaintiff has added no allegations regarding an unprivileged communication to a third party in his Amended Complaint and furthermore fails to address this argument in his response. Because the Plaintiff has failed to allege sufficient facts to support an essential element of his claim, the Court grants Defendants' Motion to Dismiss as to

Plaintiff's claims for libel and slander.

McGrath's claim for false light fails for the same reason. Mississippi has recognized the tort of Invasion of Privacy through Publicity Placing a Person in a False Light. <u>Cook v. Mardi Gras Casino Corp.</u>, 697 So. 2d 378, 382 (Miss. 1997). The elements of this tort require: (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. <u>Id.</u> The tort of false light also requires, "publicity," which in an invasion of privacy sense "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." <u>Williamson v. Keith</u>, 786 So. 2d 390, 396 (Miss. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a); <u>see also</u> RESTATEMENT (SECOND) OF TORTS § 652E cmt. a. Defendants argue that the Plaintiff fails to allege "that Defendants placed any false information about the Plaintiff in front of anyone, much less the public domain." The Court agrees, and grants Defendants' Motion to Dismiss as to this claim.

## III.     Breach of Implied Contract

McGrath asserts that the Defendants are "liable to the Plaintiff for breach of implied contract in failing to follow their own procedures for performance reviews and then discharging the Plaintiff on the pretense of poor performance." As noted above, "Mississippi follows the common law rule that a contract for employment for an indefinite period may be terminated at the will of either party . . . [for] good reason, a wrong reason, or no reason at all . . ." <u>McArn</u>, 626 So. 2d at 606 (quoting <u>Kelly v. Miss. Valley Gas Co.</u>, 397 So. 2d 874, 874-75 (Miss. 1981)). An employee may not use a theory of implied contract to "get around the 'employment at will' doctrine and sue their

employers for breach of an 'implied contract' for employment." HeartSouth, PLLC v. Boyd, 865 So. 2d 1095, 1108 (Miss. 2003). A limited exception to this rule may occur "when an employer publishes and disseminates to its employees a manual setting forth the proceedings which will be followed in event of an employee's infract of rules, and there is nothing in the employment contract to the contrary, then the employer will be required to follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual." Bobbitt v. The Orchard, LTD, 603 So. 2d 356, 357 (Miss. 1992); see also Cothern v. Vickers, Inc., 759 So. 2d 1241, 1247 (Miss. 2000) (summary judgment would be inappropriate where Plaintiff produced evidence of "some written policy which gave him a right to be counseled and an opportunity to correct his deficiencies before disciplinary action could be taken").

Plaintiff alleges that the Defendants arranged for a performance review that was not within the ambit of company policies that the review be conducted by a person familiar with the Plaintiff's performance and that did not provide for sufficient input from the employee. Plaintiff further alleges that one of the reasons advanced for his termination—his failure to obtain approval from Michael Grief, the general counsel for Empire—violated a company policy which directed McGrath to answer and take direction from Kevin Burnette, his supervisor at Polyester Fibers. The Court finds Plaintiff's allegations sufficient at this stage of the litigation to state a plausible claim under the Bobbitt exception to the employment at-will doctrine. Defendants' Motion to Dismiss will be denied as to this claim.

## IV.     Intentional Infliction of Emotional Distress and "Outrage"[3]

---

[3]In Mississippi, the tort of "outrage" is considered equivalent to a claim of intentional infliction of emotional distress, Buchanan v. Gulfport Police Dept., 2012 WL 1906523, *12 n.6 (S.D. Miss. May 25, 2012).

To succeed on a claim of intentional infliction of emotional distress (IIED), a plaintiff must prove the following elements:

> (1) A defendant acted wilfully or wantonly towards the plaintiff; (2) the defendant's acts are ones which evoke outrage or revulsion in a civilized society; (3) the acts were direct at or intended to cause harm to plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

J.R. v. Malley, 62 So. 3d 902, 906 (Miss. 2011). "A claim for intentional infliction of emotional will not *ordinarily* lie for mere employment disputes." Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 851 (Miss. 2001) (emphasis added) (affirming trial court's grant of summary judgment on IIED claim but specifically noting "Since . . . [Defendant]'s conduct fell well short of retaliatory discharge, no claim for [IIED] can lie."). The Defendants argue that the conduct alleged in the Complaint is not sufficiently outrageous enough to support such a claim. However, the cases relied on by the Defendants were either decided at the summary judgment stage, not factually analogous to the allegations in the complaint, or both.[4] McGrath responds that a jury is entitled to determine whether Plaintiff's allegedly retaliatory discharge for reporting the illegal conduct of his employer combined with false accusations of racism and poor performance is sufficiently outrageous behavior to support a claim for IIED. The Court finds that McGrath has at least alleged a plausible claim for IIED at this stage of the litigation. Accordingly, the Court denies

---

[4]Davis v. Belk Stores Servs., Inc., 2009 WL 44204 (S.D. Miss. Jan. 6, 2009) (dismissing IIED claim on summary judgment); Cooper v. Drexel Chem. Co., 949 F. Supp. 1275, 1284 (N.D. Miss. 1996) (dismissing IIED claim on summary judgment where "plaintiff . . . has not demonstrated that the facts at bar go beyond the 'realm of an ordinary employment dispute.'"); Poindexter v. Southern United Fire Ins. Co., 880 So. 2d 373, 376-77 (Miss. Ct. App. 2004) (finding allegations that defendant insurance company "committed intentional infliction of emotional distress by its refusal to pay [plaintiff's] storage and towing expenses" insufficient to state a claim for IIED;

Defendants' Motion as to this claim.

**V.      Intentional Interference with Business Relations**

McGrath also asserts an "alternative" cause of action against Empire for wrongfully interfering with his business relationship with Polyester Fibers. The tort of intentional interference with a business relationship (IIBR) requires four elements: "(1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiff[] in [his] lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted." Biglane v. Under The Hill Corp., 949 So. 2d 9, 15-16 (Miss. 2007) (quoting MFB Corp. v Century Bus. Comms., Inc., 663 So. 2d 595, 598 (Miss. 1995)).   McGrath alleges that Empire conspired with Polyester Fibers to facilitate Plaintiff's wrongful discharge with the intent "to cover over the express directions of Empire to Polyester Fibers that . . . would constitute crimes."

The Court finds that Plaintiff has pleaded sufficient facts to state a plausible claim for IIBR against Empire. Empire also argues in the alternative that, even if Plaintiff states a claim for IIBR, its actions were privileged. "Interference is not wrongful or actionable if undertaken by someone in the exercise of legitimate interest or right, which constitutes 'privileged interference.'" Hopewell Enter., Inc. v. Trustmark Nat'l. Bank, 680 So. 2d 812, 819 (Miss. 1996). This is necessarily a fact intensive inquiry which would be inappropriate to resolve at the Motion to Dismiss stage. Accordingly, the Motion to Dismiss will be denied as to this claim.

**VI.      Fraud**

Finally, Plaintiff also alleges in his Complaint that "the actions of the Defendants . . .

demonstrate a pattern of illegal activity, deceitful behavior, misrepresentation, fraud and outrageous conduct for which the Defendants are liable to the Plaintiff in damages." Defendants assert that to the extent Plaintiff is attempting to bring a separate claim for fraud, it is inadequately pleaded.

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity" the circumstances constituting the alleged fraud. FED. R. CIV. P. 9(b); see also MISS. R. CIV. P. 9(b) (same). Fifth Circuit precedent "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" Flaherty & Crumrine Preferred Income Fund, Inc., 565 F.3d 200, 206 (5th Cir. 2009) (citations omitted); see also Tel-Phonic Services, Inc. v. TBS Intern, Inc., 975 F.2d 1134, 1138-39 (5th Cir. 1992) ("At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.").

Plaintiff fails to respond to Defendants' argument regarding his fraud claim, and the Court finds that to the extent Plaintiff intends to pursue a claim for fraud, it has been inadequately plead. Accordingly, the Court grants Defendants' Motion to Dismiss as to Plaintiff's fraud claim.

**Motion to Dismiss, or in the Alternative, for Summary Judgment [51]**

Defendant Empire has filed a separate Motion to Dismiss the claims against it, contending that the Amended Complaint seeks to improperly pierce the corporate veil and disregard its corporate form. Alternatively, Empire asserts that it is entitled to summary judgment because it has no ownership interest in Polyester Fibers. Plaintiff responds that he is not alleging vicarious liability on the part of Empire, but seeks to hold Empire liable for its own direct actions. As Plaintiff does

14

not allege that Empire is vicariously liable through its purported ownership of Polyester Fibers and does not attempt to pierce the corporate veil, the Motion to Dismiss, or in the Alternative, for Summary Judgment is not well taken and will be denied at this point. However, such denial shall be without prejudice. Empire may re-urge the motion if, after a reasonable opportunity for discovery, the facts of this case demonstrate that some or all of Plaintiff's claims against Empire are based solely on its purported ownership of Polyester.[5]

**Motion for Sanctions [63]**

Defendants have also filed a Motion seeking sanctions under Federal Rule of Civil Procedure 11. Rule 11 allows sanctions under the following circumstances: (1) the pleading is "presented for any improper purpose, such as to harass . . ."; (2) "the claims, defenses, and other legal contentions are [not] warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (3) "the factual contentions [do not] have evidentiary support or, if specifically so identified, will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery"; and (4) "the denials of factual contentions are [not] warranted on the evidence...." Fed. R. Civ. P. 11(b). "Rule 11 places three duties on counsel: (1) counsel must make a reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the cost of litigation." St. Amant v. Bernard, 859 F.2d 379, 382 (5th Cir. 1988). "Rule 11 is violated if any of the above obligations are breached because each is an independent duty of

---

[5]Prior to Plaintiff filing his Amended Complaint, Empire filed a substantially identical Motion to Dismiss [17], which the Court also denies without prejudice.

15

a signing attorney." <u>Thomas v. Capital Sec. Services, Inc.</u>, 812 F.2d 984, 988 (5th Cir. 1987).

Rule 11 is designed to "deter frivolous claims and curb abuses of the legal system, thereby speeding up and reducing the costs of litigation." <u>Columbia Gulf Transmission Co. v. United States</u>, 966 F. Supp. 1453, 1466 (S.D. Miss. 1997) (quoting <u>Binghamton Masonic Temple, Inc. v. Bares</u>, 168 F.R.D. 121, 126 (N.D.N.Y. 1996)). A court must employ a standard of objective reasonableness to determine whether or not a Rule 11 violation has occurred. <u>Bus. Guides, Inc. v. Chromatic Comms. Enters., Inc.</u>, 498 U.S. 533, 548, 111 S. Ct. 922, 931–32, 112 L. Ed. 2d 1140 (1991).

The thrust of Defendants' argument seems to be that Plaintiff's counsel violated Rule 11 by filing an Amended Complaint, that, in Defendants' view, fails to state a claim under Rule 12(b)(6). Defendants have also attached a chain of e-mails between the Plaintiff's and Defendants' counsel which Defendants' contend show that "Plaintiff's 'story' of the facts and circumstances giving rise to the case kept evolving and changing."

The Court has reviewed the arguments raised in Defendants' Motion, as well the attached email correspondence, and finds Defendants' Motion to be without merit. Defendants have failed to demonstrate that Plaintiff's counsel failed to undertake a reasonable inquiry into the facts or law. Furthermore, the Defendants have presented no basis for the Court to find that Plaintiff's claims were brought for an improper purpose, or that Plaintiffs' claims are objectively frivolous. Consequently, Defendants' Motion for Sanctions is denied.

## CONCLUSION

(1)     Defendant Empire's Motion to Dismiss [17] is DENIED;

(2)     Defendants' Joint Motions to Dismiss [19] and [53] are DENIED except as to Plaintiff's claims for libel, slander, false light and fraud;

(3)      Defendants' Motion to Strike [49] is DENIED;

(4)     Defendant Empire's Motion to Dismiss, or in the Alternative, for Summary Judgment [51] is DENIED;

(5)     Defendants' Motion for Sanctions [63] is DENIED.

SO ORDERED on this, the 7th day of January, 2013.

/s/ Sharion Aycock_____
**UNITED STATES DISTRICT JUDGE**

17